E. WILSON et al. v. JOHN W. LEARY et als.

*Action to Recover Land—Corporation, Dissolution of—Land Belonging to Extinct Corporation.*

Upon the dissolution or extinction of a corporation for any cause, real property conveyed to it in fee does not revert to the original grantors or their heirs, and its personal property does not escheat to the State; and this is so whether or not the duration of the corporation was limited by its charter or general statute. (*Fox* v. *Horah,* 36 N. C., 358 overruled.)

Civil action, for the recovery of land, tried before *Robinson, J.,* at Fall Term, 1896, cf Bertie Superior Court, upon an agreed statement of facts, a jury trial being waived. The land in controversy was conveyed on the 5th day of July, 1849, by Henderson Wilson, the ancestor of plaintiffs, to trustees for Oriental Lodge, No. 24, Independent Order of Odd-Fellows, which was incorporated under an Act of the General Assembly of North Carolina, at its session of 1850. The conveyance was in fee. The trustees and the Lodge went into possession and held it until 1872, when the Lodge ceased to exist, and was never revived. Under the direction of the Grand Lodge of Odd Fellows, the land was sold in 1873, to the defendants. Previous to the incorporation of Oriental Lodge by the General Assembly, it had been chartered by the Grand Lodge upon regular petition, and was one of the regularly constituted and duly organized subordinate lodges or branches of the order. It was also agreed that the plaintiffs had never listed its property for taxation. The action was brought March 5, 1892, but the plaintiffs, as heirs at law of Henderson Wilson, the original grantor, claiming that the land reverted to them upon the extinction of the corporation, His Honor gave judgment for the plaintiff, and defendants appealed.

*Messrs. Battle & Mordecai*, for plaintiff. .

*Messrs. Francis D. Winston* and *Shepherd & Busbee*, for defendants (appellants).

CLARK, J.: The plaintiffs must recover upon the strength of their own title, and not upon defects, if any, in the title of the defendants.    The conveyance by their ancestor, Henderson Wilson, was in fee simple to trustees "to convey to Oriental Lodge, No. 24, I. O. O. F., when the same shall have been incorporated by the Legislature of North Carolina." It was subsequently incorporated. Though no conveyance by such trustees to the Lodge is shown, the learned counsel for the plaintiffs admitted that the Statute of Uses, 27 Henry VIII, in force in this State by virtue of our statute, executed the use without the execution of a deed.    The grant to the trustees being in fee simple, the *cestui que trust* took in fee.    *Holmes* v. *Holmes*, 86 N. C., 205.    When the lodge ceased to exist for want of members, whether its property passed to the Grand Lodge of I. O. O. F. in this State, of which Oriental Lodge, No. 24, was a member, or escheated to the State for the University (Code, Sec. 2627), does not concern the plaintiffs, and is not before us.    The title in fee simple had passed out of the grantor, and having vested in the Oriental Lodge, upon the extinction of the latter as a corporate entity, its property, by no just construction, could return to those whose ancestors had conveyed it in fee upon receipt of the purchase money, which he and they have kept and enjoyed.

The plaintiff's counsel insist, however, that at the time of the conveyance, the Revised Statutes (Ch. 26, Sec. 17) provided that a corporation, unless, otherwise specially stated in its charter, had existence for only 30 years, and as there was no special provision in this charter, the grantor only parted with the property for 30 years and held a resulting

trust.    But the conveyance was in fee, and a corporation limited in duration can take a fee simple conveyance just as a natural being, whose existence is also limited.    Either may convey away the property, and upon the death of either, without having disposed of it, the property will go to pay creditors, to heirs, to stockholders, or as an escheat, according to the circumstances, but in neither case is there any reverter to the grantors.    On the death of a corporation the property is usually administered by a receiver, and on the death of a natural person, by the personal representative or passes to the heirs.

By the Constitution of North Carolina (Article VIII, Sec. 1) all corporations (if chartered since 1868) are subject to extinction at any time, or their duration can be abridged or extended, at the will of the legislature.    It would now be a startling doctrine that upon the repeal of a charter, all real estate, though conveyed to the corporation absolutely in fee simple, reverts as at common law to the original grantors, to the total exclusion and loss of creditors and stockholders.    On the contrary, such property, when not held on a base or qualified fee, as was the case in *State* v. *Rives*, 27 N. C., 297 (though it has been since held that there are no qualified fees in this State—*School Com.* v. *Kesler*, 67 N. C., 443), would be administered to pay creditors, the surplus being divided among the stockholders.    If there were no stockholders, then the question might arise whether the property had escheated to the State, but certainly the grantors, upon such corporation becoming extinct, would have no greater right to a reversion than would the grantors to any other corporation.    There was no attempt to make avail of the three years and a receiver allowed by The Code, Secs. 667, 668, to wind up a corporation and sell its property, and hence no question is raised whether they apply to a corporation which was chartered before they were enacted.

It is true, it was held in an opinion by Gaston, J., *Fox* v. *Horah*, 36 N. C., 358, that by the common law, upon the dissolution of a corporation by the expiration of its charter or otherwise, its real property reverted to the grantor, its personal property escheated to the State, and its choses in action became extinct, and hence that, on the expiration of the charter of a bank, a court of equity would enjoin the collection of notes made payable to the bank or its cashier, the debtor being absolved by the dissolution. Judge Thompson (5 Thomp. Corp. Sec. 6720) refers to this decision " in accordance with the barbarous rule of the common law" as "probably the last case of its kind," and notes that it has since been in effect overruled in *Von Glahn* v. *DeRossett*, 81 N. C., 467, and it is now expressly overruled by us. Chancellor Kent (2 Com. 307, note) says "this rule of the common law has, in fact, become obsolete and odious," and elsewhere he stoutly denied that it had ever been the rule of the common law, except as to a restricted class of corporations (5 Thompson, *supra*, Sec. 6730). The subject is thoroughly discussed by Gray on Perpetuities, Sections 44-51, and he demonstrates that my Lord Coke's doctrine rested on the dictum of a 15th century judge (Mr. Justice Choke, in the Prior of Spalding's Case, 7 Edward IV, 1467), and is contrary to the only case deciding the point, *Johnson* v. *Norway*, Winch. 37 (1622), though Coke's statement has often been referred to as law. But whatever the extent of this rule at the common law, if it was the rule at all it was not founded upon justice and reason, nor could it be approved by experience, and has been repudiated by modern courts. The modern doctrine is, as held by us, that "upon a dissolution the title to real property does not revert to the orginal grantors or their heirs, and the personal property does not revert to the original grantors or their heirs, and the personal prop-

erty does not escheat to the State." . 5 Thompson, *supra*, Sec. 6746; *Owen* v. *Smith*, 31 Barber, 641; *Towar* v. *Hale*, 46 Barb., 361. The crude conceptions of corporatons naturally entertained, in a feudal and semi-barbarous age, when they were few in number and insignificant in value and functions, by even so able a man as Sir Edward Coke, and the fanciful reason given by him (Coke Lit., 136) for the reverter of their real estate, to wit, that a conveyance to them must necessarily be a qualified or base fee, have long since become outworn and discredited. That which is termed " the common law " is simply the " right reason of the thing " in matters as to which there is no statutory enactment. When it is misconceived and wrongly declared, the common rule is equally subject to be overruled, whether it is an ancient or a recent decision. Upon the facts agreed judgment should be entered below against the plaintiffs, dismissing their action.

Reversed.