P. C. THOMAS v. THOMASVILLE SHOOTING CLUB.

(Decided November 29, 1898.)

*Vague Agreement.*

An agreement, so vague and indefinite, that it is not possible to collect from it the full intention of the parties, will not sustain an action.

CIVIL ACTION for damages tried before *Allen, J.*, and a jury at Fall Term, 1898, of DAVIDSON Superior Court.

The case originated in the Justice's Court—the plaintiff claimed $75 damages by reason of the failure of defendants to aid him in the building of a barn on his own land, as per agreement.

The defendant moved to dismiss the action as upon judgment of non-suit. His Honor refused the motion—and submitted the evidence to the jury, who rendered a verdict for $65 in favor of plaintiff.

Judgment accordingly. Defendant excepted and appealed.

The complaint and evidence are stated in the opinion.

*Mr. E. E. Raper*, for defendants (appellants).
*Messrs. Walser & Walser*, for plaintiff.

MONTGOMERY, J.:   The complaint is as follows :
1. That the Thomasville Shooting Club is a body cor-

porate, duly incorporated under the laws of North Carolina.

2. That the plaintiff, by request or order of the defendant, expended considerable money and labor to erect a barn for the use of defendants, and agreed to advance the money to assist plaintiff in erecting said barn.

3. That defendant failed to comply with agreement and erected another barn on defendant's property.

Wherefore the plaintiff demands a judgment for damages in the sum of $75 with interest from the 1st day of October, 1894, and the costs of this action.

The plaintiff testified in these words : "Thomasville Shooting Club is a corporation. The Club asked me to build a barn on my own premises and agreed to furnish part of the money for its erection ; and afterwards refused to do so. I built it 40 by 45 feet, and put up a brick wall about four feet above ground and built a basement. I put in only part of timber and got it thus far in September. In September, 1894, Mr. Davis came down and went in and showed me how he wanted it arranged. He afterwards sent for me and said I have decided to build a barn myself on Club lot, and I did nothing more on my barn. Davis wrote me a letter about barn, and in it said substantially, ' How about barn ? we will want ample stable accommodations. Our business will be a considerable item. I mean to rig you up so you may make something out of this.' The lumber I got to build barn cost me $65. I had no use for it. I sold part of it. Brick cost me $60. I used part of them last year in my house. Labor cost $15 and lime cost $10. The barn was to be walled in and was to be exclusively for the use of the Club. It was to be my barn on my own lot, but it was to be for the Club's

stock exclusively.   My compensation for building barn was to come out of what I got from the Club for taking care of their stock."

The defendant moved to dismiss the action as upon judgment of non-suit, under Chapter 109 of the Acts of 1897.   The motion was refused but it ought to have been allowed.   The plaintiff abandoned here any claim to recover for damages based upon the profits which he might have made if the barn had been completed and the stock of the defendant stabled there.   Such claim was admitted to be purely speculative.   But the plaintiff insists that he had a contract with the defendant to build the barn on his own land for the accommodation of the stock of the defendant for profit and that the defendant failed to comply with its part of the contract.   The plaintiff's testimony is the only evidence of the contract.   That evidence does not tend to prove a contract ; it was no evidence of a contract.   "The Club," the plaintiff testified, "asked me to build a house on my own land and agreed to furnish *part of the money* for its erection; and afterwards refused to do so."   Who could tell how much money the defendants agreed to furnish?   The plaintiff did not say.   And who can estimate the damages which arose from the failure of the defendant to furnish an unknown and uncertain amount of money for the purposes mention in the complaint?   The communications between the parties are too uncertain to constitute a contract.   "In order to constitute a valid, verbal or written agreement the parties must express themselves in such terms that it can be ascertained to a reasonable degree of certainty what they mean. And if an agreement be so vague and indefinite that it is not possible to collect from it the full intention of the parties it is void ; for neither the court nor the jury can

make an agreement for the parties." Chitty on Contracts, p. 68. Besides, the plaintiff does not allege, nor did he offer to show, that the failure of the defendant to furnish money to build the barn prevented him from completing it; on the contrary he insists that he left off building the barn after he had commenced the work because defendant built one on their own property. There was error and the judgment is reversed.

Reversed.

DOUGLAS, J., dissenting: I cannot concur in the opinion of the Court that the "plaintiff's evidence does not tend to prove a contract." It is not for us to say whether the evidence proves or does not prove a contract, as that is the exclusive province of the jury. All that we can say is that there is no evidence, or nothing beyond a mere scintilla, *tending* to prove a contract. *Wittkowsky* v. *Wasson*, 71 N. C., 451; *Spruill* v. *Insurance Co.*, 120 N. C., 141, and cases therein cited. In going even that far, we must assume the evidence offered in behalf of the plaintiff to be true, and must construe it in the light most favorable to him, because, as this Court has said in *Springs* v. *Schenck*, 99 N. C., 551, 555, "The jury might have taken that view of it. if it had been submitted to them." *Avery* v. *Sexton*, 35 N. C., 247; *Hathaway* v. *Hinton*, 46 N. C., 243; *State* v. *Allen*, 48 N. C., 257, 268; *Abernathy* v. *Stowe*, 92 N. C., 213; *Gibbs* v. *Lyon*, 95 N. C., 146; *Hodges* v. *Railroad*, 120 N. C., 555; *Collins* v. *Swanson*, 121 N. C., 67; *Cable* v. *Railroad*, 122 N. C., 892.

Taking, then, the evidence in the light most favorable to the plaintiff, it seems to me that there is unquestionably more than a scintilla of evidence *tending* to prove a contract, the terms of which were substan-

tially as follows: The defendant induced the plaintiff to build a barn upon his premises and agreed, in consideration of a right to its exclusive use, to furnish part of the money necessary for its erection. As a further consideration, the defendant agreed to pay the plaintiff for taking care of the stock kept in said barn. In pursuance of this agreement, the plaintiff began to build the barn, and continued until the defendant notified him of its refusal to abide by the contract. In its partial erection and before such notification, the plaintiff had expended $65 for lumber, $60 for brick, $15 for labor, and $10 for lime, aggregating the sum of $150, no part of which was paid by the defendant. For the labor and the lime (necessarily a total loss) and the depreciation in the value of the lumber and brick by their partial use, the plaintiff demands the sum of $75. This did not include any speculative or prospective profits. It did not even amount to the bare outlay, but included only the actual loss in cash after allowing a reasonable sum for the value of the material that could be re-used.

We should remember that speculative damages are denied, not because there is no injury (*injuria*) of which the plaintiff can complain, but because the loss or damage (*damnum*) resulting from such injury is incapable of definite estimation. In the present case, there is no difficulty in estimating the damage asked by the plaintiff for the breach of the contract by which the defendant induced him to alter his condition. Subtract the value of the remaining material from the amount already expended, and you have the actual damages by a mere arithmetical calculation.

If a party were to induce a lawyer or a doctor to visit a distant city under the promise of professional employ-

123—19

ment and were then to refuse his services. I think the injured party would be entitled to recover his actual damages. The lawyer could not demand the speculative profits of a contingent fee; but why could he not recover his actual expenses incurred at the request of the defendant? It is true that the plaintiff does not allege that he was unable to complete the barn; but neither is there any evidence that he was able to complete it, or had any use for it if completed. Even if able to do so, no one would care to put money into a building which would be neither useful nor profitable, and which would necessarily deteriorate. I think the judgment should be affirmed.

FURCHES, J.: I concur in the dissenting opinion.