J. S. COX, Administrator of N. L. Cox, v. NORFOLK AND CARO-
LINA RAILROAD.

(Decided December 23, 1898.)

*Negligence—Contributory Negligence—Burden of Proof
—Non-suit—Act of 1897, Chapter 109.*

1. In a motion to non-suit under Act of 1897, Chapter 109, plaintiff's evi-
dence must be accepted as true and construed in the most favor-
able light to him.   If there is more than a mere scintilla of evi-
dence, it must be submitted to the jury.

2. The burden of proving negligence rests upon the plaintiff; that of
proving contributory negligence rests upon the defendant, and
then for the plaintiff to show the last clear chance of the defend-
ant—each issue depending upon the preceding

3. The Judge may say to the jury that there is no evidence tending to
prove a fact; but he can never say a fact is proved.

4. It is the settled rule, that a verdict can never be directed in favor of
the party upon whom rests the burden of proof, and who, in all
cases, is considered to have the affirmation of the issue, whatever
may be its form

5. The Act of 1887, Chapter 33, imposes the burden of proving contribu-
tory negligence upon the defendant.   It therefore follows, that on
a motion to non-suit the Court can only consider the evidence re-
lating to the negligence of the defendant, and if there is more than
a scintilla tending to prove such negligence, the motion must be
denied and the case submitted to the jury.

6. Where the evidence, considered in the light most favorable to the
plaintiff tends to show that the deceased was killed by a train
running backwards in a town at night, and neither sounding the
whistle nor ringing the bell, although passing over a track on the
old county road, habitually used as a foot path.   This amounts to
more than a scintilla of evidence tending to prove negligence on
the part of the railroad, and should be submitted to a jury.

CIVIL ACTION to recover damages for the negligent
killing of the intestate of plaintiff by defendant's train,
tried before *Norwood, J.*, at HALIFAX Superior Court.

Cox *v.* Railroad.

### ISSUES.

1. Did the defendant negligently kill the plaintiff's intestate ?

2. Was said intestate guilty of contributory negligence ?

3. Notwithstanding such negligence on the part of said intestate, could the defendant by the exercise of due care and prudence have prevented the killing ?

There were a number of witnesses examined on the part of the plaintiff, whose evidence is stated in full in the opinion.

It tended to show that the dead body of intestate was in a crushed condition, with one hand and one foot cut off, was found lying across the track of defendant between 12 and 1 o'clock of a bright moonlight night on July 7, 1897, where the track, on a level grade crossed the old county road, now used habitually as a foot path, along which deceased usually walked to and from his house and the village of Hobgood, where the occurrence took place. That about two hours before the body of deceased was found, that a train of the defendant had backed along the track and past the spot, without sounding the whistle or ringing the bell. That the intestate was in a drinking condition that day.

At the conclusion of plaintiff's evidence, the defendant moved to non-suit the plaintiff.

His Honor adjudged that the action be dismissed, at costs of plaintiff.

Plaintiff excepted, and appealed.

*Messrs. W. A. Dunn* and *Claude Kitchen,* for plaintiff (appellant).

*Messrs. Thos. N. Hill, McRae & Day* and *David Bell,* for defendant.

Douglas, J., delivers the opinion.
Faircloth, C. J., dissents.

Douglas, J. : This is an action brought by the plaintiff as administrator of N. L. Cox to recover damages for the negligent killing of his intestate by the defendant's engine. At the close of plaintiff's testimony, the defendant moved to non-suit the plaintiff under Chapter 109 of the Laws of 1897. This is the Act that has already given us so much trouble. It was doubtless intended by the Legislature to save time and expense by cutting short an action devoid of merit, but its practical result is the very opposite. It gives the defendant two chances to one for the plaintiff, prolongs litigation, and may cause a palpable miscarriage of justice. As stated in *Purnell* v. *Railroad*, 122 N. C., 832, 835, ''Before this statute, the defendant might make this motion, but if the Court refused it and the defendant offered further evidence, he lost the benefit of that motion. The motion could be renewed at the close of the evidence in the case, but would then depend upon the whole evidence''—citing *Sugg* v. *Watson*, 101 N. C., 188. Now, however, the defendant, if his motion is overruled, can file his exception and proceed with the case. In passing upon that exception, we would be compelled to ignore all the subsequent proceedings, including the additional evidence, the verdict and judgment. If we sustained the exception the plaintiff must be non-suited even if the subsequent evidence of the defendant himself should show the plaintiff clearly entitled to recovery. If we overruled the exception we must then proceed to review the case upon its merits. Thus, there would be practically two appeals, in one of which we might be compelled to nonsuit a plaintiff who had obtained a just judgment.

We do not intend to criticise the Legislature, but simply to call attention to the fact that the law in practical operation does not meet the public purposes of its enactment. While doing so, we still deem it our duty to enforce it.

The case as now before us presents the single question whether there was sufficient evidence to go to the jury as to the negligence of the defendant. The plaintiff's evidence must for the present purpose be accepted as true, and construed in the light most favorable for him. *Avera* v. *Sexton*, 35 N. C., 247. *Hathaway* v. *Hinton*, 46 N. C., 243; *State* v. *Allen*, 48 N. C., 257; *Abernathy* v. *Stowe*, 92 N. C., 213; *Gibbs* v. *Lyon*, 95 N. C., 146; *Springs* v. *Schenck*, 99 N. C., 551; *Hodges* v. *Railroad*, 120 N. C., 555; *Collins* v. *Swanson*, 121 N. C., 67; *Cable* v. *Railroad*, 122 N. C., 892; *Whitley* v. *Railroad*. Ibid, 987; *Chicago N. & S. Ry. Co.* v. *Lowell*, 151 U. S., 209.

It is well settled that if there is more than a mere scintilla of evidence tending to prove the plaintiff's contention, it must be submitted to the jury, who alone can pass upon the weight of the evidence. *State* v. *Shule*, 32 N. C., 153; *State* v. *Allen*, 48 N. C., 257; *Wittkowski* v. *Wasson*, 71 N. C., 451; *Spruill* v. *Ins. Co.*, 120 N. C., 141; *Hardison* v. *Railroad*. 120 N. C., 492; *Bank* v. *School Comm.*, 121 N. C., 107; *White* v. *Railroad*, 121 N. C., 484; *Collins* v. *Swanson, supra; Eller* v. *Church,* 121 N. C., 269; *Cable* v. *Railroad, supra.*

Applying these principles, we find the following evidence which we think is certainly more than a scintilla, and which should have been submitted to the jury as tending to prove the negligence of the defendant. No

one saw the killing, nor does it appear how long the deceased had been killed when found.

Thomas Griffin testified: "That between 12 and 1 o'clock he found some one dead on the railroad (proved to be deceased). He was lying across the track with one hand cut off on one side and one foot on the other. . . . Saw a train pass that night about two hours before I saw Cox. I was about 200 yards from it, I guess. The train was running backwards when I saw it; it made no stop. At the time when I saw the train it was on the Norfolk & Carolina Railroad; it was on the Y the last time; *heard no bell or whistle.* The moon was shining bright."

James Sills testified that:

"Tom reported to Massey, the night operator, that he had found a dead body on the road. We went and examined and found it was Cox. He was lying catacornered across the railroad, one side of his face torn, his skull crushed, one of his hands cut off. His hat was lying on the right-hand side of the switch, and his foot was lying crushed off, and one of his legs was broken. The roads run pretty near together up there. The switch goes from the Norfolk and Carolina to the Wilmington and Weldon. There is a public foot-path there. It was the old county road. It goes right by my store from the main road across the W. and W. R. R. It goes out into the main road. Most people traveling afoot go on that road. Cox could not go out of town any way without crossing a railroad. This was the usual path to his house—the path he always walked. No obstructions nor anything from the railroad in the way of the path. A person could easily be seen that night on the railroad near the path from the depot. It was a moonlight night—a bright moonlight night. Heard

Cox *v.* Railroad.

no noise, signals, nor anything of that kind. Heard no bell or whistle.

P. E. Smith, admitted to be an expert engineer, testified: "It was two hundred and fifty feet from the depot to where he was found; this was about ten feet from the path. That there was no obstruction between depot and point opposite depot to this road and path. There is a small cut in road right opposite depot, but after that it is level all the way. Small tree between house and railroad, twenty-four feet from centre of road to centre of tree. House and tree would not interfere with view from train if any one was moving along the track by this switch. If I were looking out for a man I could see him one hundred yards ahead of me on a bright moonlight night. If a man was keeping a lookout, he could see a man on the track for one hundred yards." The witness was asked, "Would the manner in which this road was curved around prevent you from seeing him?" The witness answered, "There is no obstruction in the view because the man is on a level; you can look across the track; you cannot look straight down, but you can look across."

On the re-direct examination he stated that "if the train were moving at a speed of three or four miles an hour, it could have been stopped in *fifteen* feet; if eight miles an hour, in double that distance."

The plaintiff testified that "The deceased was his brother . . . . and he got some gentlemen on Monday night and went out there, and took a hand off my farm, about the size of my brother, made him lie on the track, went to about even with course of warehouse and could see him while standing up; he lay down and I could see him. The night was moonlight and a little cloudy. . .

123—39

The path was the old road at one time before the town was laid off into streets, and had been used by *foot passengers ever since.*"

R. M. Quidly testified that "he was in Hobgood that night; it was a clear moonlight night. I saw train about ten o'clock pass; *heard neither signal nor bell;* I was about 100 yards from the track." There was also testimony tending to show the deceased had been drinking.

Taking this evidence in the light most favorable to the plaintiff, we find a train running backwards in a town at night, and neither sounding the whistle nor ringing the bell, although passing over a track on the old country road which has ever since been habitually used as a foot-path. It is admitted that the deceased was killed by the train, which would be the natural inference from the evidence. This is certainly more than a scintilla of evidence tending to prove the negligence of the defendant, which should have been submitted to the jury. There was error in directing a non-suit.

Had the question not been again presented by counsel, it would almost seem needless to repeat what we, have so often said, that the burden of proving negligence rests upon the plaintiff, while the *onus* of showing contributory negligence rests upon the defendant. In both cases this must be shown by a greater weight of the evidence, and of this relative weight the jury alone can determine. A negative presumption necessarily accompanies the burden, and remains until the burden is lifted or shifted by direct admissions or a preponderance of proof. Each issue bears its own burden, and it rarely happens that the burden of all the issues rests upon the same party. In cases of negligence like the present, it changes with each successive step, it be-

ing necessary for the plaintiff to prove the negligence of the defendant, the defendant the contributory negligence of the plaintiff, and again for the plaintiff to show the last clear chance of the defendant if that issue becomes material.

Each of these issues depend. upon the one preceding. The plaintiff must first prove that he was injured by the negligence of the defendant. If he fails to prove it that is an end of the case, and the defendant is not then required to prove contributory negligence. Properly speaking, there can be no contributory negligence unless there is negligence on the part of the defendant. 7 Am. & Eng. Enc., 373 (2nd Ed.). This distinction is important as affecting the burden of proof and the consequent direction of a verdict. If the negligence by which the plaintiff is injured is entirely his own, as in Mesic's case, where instead of the train running into the horse, the horse ran into the train, then there is no evidence to go to the jury on the first issue, and the question of contributory negligence becomes immaterial. Where there is evidence tending to prove negligence on the part of both parties, the case must always be submitted to the jury, and it makes no difference if this evidence appears in the testimony of the plaintiff. The Court may say to the jury that there is no evidence tending to prove a fact, but it can never say that a fact is proved. Under exceptional circumstances, not now before us, it may say that if the jury believe the evidence they will answer the issue "Yes", for that is equivalent to charging the law upon a given state of facts, leaving entirely to the jury the credibility of the witnesses. Even then, if there is any conflict of testimony, the verdict is vitiated.

It is the settled rule of this Court that a verdict can

never be directed in favor of the party upon whom rests the burden of proof, who in all cases is considered to have the affirmative of the issue, whatever may be its form. Though this rule was discussed and re-affirmed in *Spruill* v. *Ins. Co.*, 120 N. C., 141, it did not have its origin in that case, but in *Wittkowski* v. *Wasson*, 71 N. C., 451, where the doctrine was distinctly laid down in the following words quoted from the opinion of Welles, J., in the Court of Exchequer Chamber: "There is in every case a preliminary question which is one of law, viz: whether there is any evidence on which the jury could properly find the question *for* the party on whom the *burden of proof* lies. If there is not, the Judge ought to withdraw the question from the jury and direct a *non-suit* if the *onus* is on the *plaintiff*, or direct a *verdict* for the plaintiff if the *onus* is on the *defendant*." In other words, the verdict must in either event be directed *against* the party on whom lies the *onus*, and by necessary implication can never be directed in his favor.

In *Spruill* v. *Ins. Co.*, *supra*, on page 147, this Court has said: "That where there is no evidence, or a mere scintilla of evidence (or the evidence is not sufficient in a just and reasonable view of it to warrant an inference of any fact in issue), the Court should not leave the issue to be passed upon by the jury, but should direct a verdict *against the party upon whom the burden of proof rests*." The words in brackets have been cited as authorizing the Court below to pass upon the entire evidence, and direct a general verdict in favor of the defendant upon the contributory negligence of the plaintiff. That opinion will bear no such construction, as the burden of proving contributory negligence is always upon the defendant. Therefore, a direction in his fa-

---

Cox v. Railroad.

---

vor, based in any degree upon the contributory negligence of the plaintiff, would be a direction *in favor* of the party upon whom rested the burden of proof, which is directly opposed to the uniform current of our decisions. *Hardison* v. *R. Co.*, 120 N. C., 492; *Collins* v. *Swanson, supra; Bank* v. *School Com.*, 121 N. C., 107; *Eller* v. *Church, supra; Caldwell* v. *Wilson*, 121 N. C., 425; *White* v. *Railroad*, Ibid, 484; *Everett* v. *Receivers*, Ibid, 519; *Cable* v. *Railroad*, 122 N. C., 892; *Johnson* v. *Railroad*, Ibid, 955; *Whitley* v. *R. Co.*, Ibid, 987.

If there had been any reasonable doubt that the burden of proving contributory negligence rested upon the defendant, it has been set at rest by Chapter 33 of the Laws 1887. The same rule prevails in the Federal Courts. *Washington, etc. R. R. Co.* v. *Gladmon*, 82 U. S., 401; *Inland, etc. Co.* v. *Talson*, 139 U. S., 551.

It therefore follows, that on a motion for a non-suit, the Court can consider only the evidence relating to the negligence of the defendant, and if there is more than a scintilla tending to prove such negligence, the motion must be denied and the case submitted to the jury.

We have discussed this question fully because the learned counsel for the defendant contended that the judgment of non-suit should be affirmed on the ground of the contributory negligence of the plaintiff. To this doctrine, so ably presented and elaborately discussed, we are permitted to assent neither by the current of our decisions nor the policy of our laws.

The judgment of non-suit is reversed and a new trial ordered.

New trial.

Faircloth, C. J., dissents.